NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No.  17-3621

_____

RAFAEL MARTINEZ, AKA Rafael Martinez Taveras,
AKA Aramis Del Valle-Roldan, AKA Rafael Aroldo Guillen, AKA Ivan Rivera,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of a Final Order
of the United States Department of Justice
Board of Immigration Appeals
Immigration Judge:  Honorable Walter Durling
(Agency No. A041-743-338)

_____

Submitted Under Third Circuit LAR 34.1(a)
on January 7, 2019

Before: AMBRO, SHWARTZ and FUENTES, Circuit Judges

(Opinion filed: January 18, 2019)

---

OPIISION[*]

---

AMBRO, Circuit Judge

Petitioner Rafael Martinez was born in the Dominican Republic in December 1970. He has lived with his biological uncle, Ricardo Taveras Pena, since the age of two. At that time Taveras Pena was a lawful permanent resident of the United States, but he became a naturalized citizen in 1977. Martinez continued to reside in the Dominican Republic, and Taveras Pena traveled back and forth between the two countries during this time. He formally adopted Martinez in the Dominican Republic in 1986, and the latter entered the United States as a lawful permanent resident in November 1988, one month shy of his 18th birthday.

Then-current immigration law provided for the children of newly naturalized citizens to acquire derivative citizenship if certain conditions were met. *See* 8 U.S.C. § 1432 (*repealed*). First, the statute defined the kind of naturalization event that triggers derivative citizenship: "(1) "the naturalization of both parents; or (2) the naturalization of the surviving parent if one of the parents is deceased; or (3) the naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." *Id*. § 1432(a)(1)–(3)

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

(*repealed*).  When one of these events occurred, if the child was under the age of 18 and either was residing in the United States as a lawful permanent resident at that time or subsequently entered the country as a lawful permanent resident prior to turning 18, the child would automatically become a citizen.  *Id*. § 1432(a)(4)–(5).

Subsection (b) of the law provided that this would only apply to an adopted child if, at the time of the naturalization event, the child was residing in the United States as a lawful permanent resident in the custody of the adoptive parent(s).  This meant that Martinez did not qualify for derivative citizenship because, in 1977 when Taveras Pena was naturalized, he did not yet reside in the United States.  Had Martinez been Taveras Pena's biological child, he would have acquired derivative citizenship on entering the country as a lawful permanent resident in November 1988 because he was not yet 18 years old.

Section 1432 was repealed by the Child Citizenship Act of 2000, Pub. L. 106-395, 114 Stat. 1631, *codified at* 8 U.S.C. § 1431 *et seq*., and replaced with a more generous provision that places adopted children on an equal footing.  Now a child gains automatic derivative citizenship whenever (1) at least one parent is a citizen of the United States, (2) the child is under the age of 18, and (3) the child is residing in the United States in the custody of his or her citizen parent as a lawful permanent resident.  *See* 8 U.S.C. § 1431(a).  And this provision expressly applies to adopted children in the same manner as biological children. *Id*. § 1431(b).

In October 2010 Martinez pled guilty to one count of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of money laundering in violation of 21

3

U.S.C. § 1956(a)(1)(B)(i). He then began filing applications with the Department of Homeland Security seeking to be recognized as a United States citizen. This application was ultimately denied in December 2015, and DHS began removal proceedings against Martinez in March 2016. The Notice to Appear filed against Martinez alleged several grounds for removability, all pertaining to his criminal convictions. At a hearing before an Immigration Judge in York, Pennsylvania, Martinez admitted to all of the factual allegations against him except one—that he was not an American citizen. His continued claim of citizenship was the sole argument against his removability, which he otherwise admitted on three of the five charges in the Notice to Appear.

The Immigration Judge initially ruled that Martinez did not qualify for derivative citizenship under the statute as it exists today. The Board of Immigration Appeals reversed, holding that the IJ should have applied the prior version of the statute. On remand, Martinez argued that the distinction drawn in the pre-2000 law between natural and adopted children violated the Equal Protection Clause of the Constitution. The IJ noted this argument but held that he did not have authority to rule on this constitutional challenge; he again held that Martinez was not an American citizen because he did not meet the criteria for adopted children under the old statute. The BIA affirmed, holding that it too lacked jurisdiction over Martinez's constitutional challenge. This petition for review followed.

Adoption status is not a suspect classification under the Supreme Court's equal protection jurisprudence. Martinez therefore argues, as he must, that the statutory scheme was not rationally related to a legitimate government interest. *See De-Leon-*

4

*Reynoso v. Ashcroft*, 293 F.3d 633, 638 (3d Cir. 2002); *Fiallo v. Bell*, 430 U.S. 787, 794–95 (1977). This is not correct. As the Government argues, the distinction between biological and adopted children served the interest of ensuring that children who acquire derivative citizenship have a real and abiding connection with the United States, not just an artificial legal one. It also served the interest of preventing immigration fraud. Other Circuits have found these interests sufficient to meet the Government's light burden under rational basis review, *see, e.g.*, *Smart v. Ashcoft*, 401 F.3d 119, 122–123 (2d Cir. 2005), and we agree.

Martinez counters that the subsequent repeal of this distinction by the Child Citizenship Act "belie[s] the notion that there is a rational or facially legitimate basis to differentiate between adopted and natural children." Petitioner's Br. at 17. He also argues that these government interests are not at play in his case because the genuine nature of his bond with Taveras Pena cannot be doubted and there is no allegation of fraud here. Similar arguments were rejected in *Smart* as misapprehending the nature of rational basis review. As the Second Circuit noted, a "congressional decision that a statute is unfair, outdated, and in need of improvement does not mean that the statute when enacted was wholly irrational or, for purposes of rational basis review, unconstitutional." *Smart*, 401 F.3d at 123. There are numerous policies that would be a rational means of advancing legitimate government interests. Congress is free to choose from among these different rational means, and thus its choice not to enact a certain provision, or to repeal that provision, cannot be taken as a judgment that the provision is

irrational. It may instead simply reflect new considerations or sensibilities that suggest taking a different direction.

Likewise, rational basis scrutiny presumes that the legislature may adopt policies that are "not precisely tailored to advance" the legitimate government interests they serve. *Id*. The Supreme Court has recognized that a law "does not fail rational-basis review because . . . in practice it results in some inequality." *Heller v. Doe*, 509 U.S. 312, 321 (1993) (cleaned up). This necessarily contemplates that laws may sometimes apply to cases in which the policy concerns motivating those laws are not present. Thus, although the immigration rules at the time of Martinez's entry into the United States may have been inequitable toward Martinez and other adopted children like him, they were not beyond the power of Congress to enact.

In this context, we deny the petition for review.